## 62074. MARTIN v. THE STATE.

POPE, Judge.

Royce Lamar Martin was indicted for the unlawful possession of a 1976 Chevrolet Corvette "from which the manufacturer's serial number had been altered for the purpose of concealing and misrepresenting the identity of such motor vehicle." He brings this appeal following his conviction and the trial court's denial of his motion for new trial. In addition to his contentions challenging the sufficiency of the evidence to support his conviction, appellant enumerates as error the trial court's allowing the jury to view the subject automobile without him being present.

1. The state presented evidence which showed that each automobile manufactured is given an identification (serial) number. No two automobiles have the same number. This vehicle identification number (VIN) is usually located on a post between the windshield and dashboard on the driver's side of every automobile; this number also appears in full on a sticker which is usually located on the door on the driver's side of the vehicle. Significant portions of the VIN appear in secondary locations in every automobile: in this case on the motor, on the transmission, and in two locations on the frame. The only VIN identifiable on the subject Corvette was that located on the windshield post. There was no sticker on the door and all the numbers on the secondary locations had been ground flat. The motor had been restamped with a different number; this number was not a Corvette number but, rather, was a GMC truck number.

The state traced ownership of the Corvette from its most recent purchaser back through four previous owners to appellant. Each owner subsequent to appellant testified that he had made no alteration to any of the identification numbers located on the vehicle. None had looked at the secondary identification numbers on the vehicle and few had looked at the VIN on the windshield post. Prior to appellant's purchase of the Corvette, the previous owner, one Satterfield, had wrecked the same. The vehicle was thereafter transferred to Satterfield's insurance company as part of a settlement agreement; the insurance company sold the vehicle as salvage to a used auto parts dealer. From this dealer, appellant purchased the body of the Corvette from the doors back; the vehicle did not contain the steering column, motor, transmission, seats, interior door panels, evaporator box, power brakes and windshield wiper motor.

State's witness Kennington testified that her Corvette had been stolen from her residence in DeKalb County. She positively identified the interior fixtures of the subject Corvette as being from

her stolen vehicle. Prior to her viewing the subject Corvette, Kennington had described the interior of her vehicle in some detail; that description matched the interior of the subject Corvette. Additionally, the key to her Corvette fit the passenger door of the subject vehicle.

Appellant testified that he rebuilt the subject Corvette from various parts he had purchased from salvage dealers throughout north Georgia. He testified that he had never looked for identification numbers on any of these parts except for the VIN on the Satterfield vehicle. He presented receipts for the purchase of the body of the subject vehicle (front and rear), the motor and the transmission. He denied altering the VIN on any of these parts. He testified that he had painted the Corvette silver and presented receipts which showed expenditures for paint, etc. A witness for the state testified that he found no evidence that the subject vehicle had ever been painted silver. No receipt was produced showing the purchase of the interior fixtures. When appellant sought to obtain a certificate of title for this rebuilt Corvette, he applied for a replacement title pursuant to Code Ann. § 68-414a by having a friend sign the name of the person who had last had title to the vehicle. Appellant explained that this previous owner (who predated Satterfield and in whose name title to the Corvette had last been certified) was A.W.O.L. from the armed services, did not wish to return to Georgia, and had given his permission over the telephone to sign his signature in his absence.

Appellant was charged with the violation of Code Ann. § 68-9916 which provides in part: "(a) It shall be unlawful to buy, sell, receive, dispose of, conceal, use, or possess any motor vehicle . . . or any part thereof from which the manufacturer's serial numbers or other distinguishing numbers or identifying marks have been removed, defaced, covered, altered or destroyed for the purpose of concealing or misrepresenting the identity of such motor vehicle." Guilty knowledge of the alteration is the gist of this offense. *Dooley v. State,* 145 Ga. App. 539 (2) (244 SE2d 55) (1978). Appellant contends that the state presented no evidence that appellant knew the numbers on the subject Corvette had been altered. We disagree. The Motor Vehicle Certificate of Title Act states: "No person shall purchase, acquire in any manner, or possess, except as herein provided, a certificate of title for a vehicle which has been sold or disposed of as salvage or wreckage or a vehicle which has been scrapped, dismantled or destroyed." Code Ann. § 68-420a (a). This statute requires that the certificate of title for any automobile which has been rebuilt, reconditioned or remanufactured must so state on the face of the certificate. Code Ann. § 68-414a provides for obtaining a replacement

title if the original certificate of title has been lost, stolen or mutilated. Appellant admitted that he had sought and obtained merely a replacement title.

Everyone is presumed to know the law and ignorance thereof is not an excuse for its violation. *McRae v. State,* 116 Ga. App. 407 (3) (157 SE2d 646) (1967). Because the certificate of title which appellant obtained for the subject Corvette did not disclose on its face that the vehicle had been rebuilt, the jury was authorized to conclude that appellant had knowingly concealed or misrepresented the identity thereof. See *Greer v. State,* 113 Ga. App. 342 (147 SE2d 877) (1966). Viewing the evidence in a light most favorable to the state, we find that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends that the trial court erred in allowing the jury to view the subject Corvette without him being present. The record discloses the following: at the close of the evidence the state renewed its request that the trial court allow the jury to view the subject Corvette; the trial court granted the state's request but ruled that the jury was to be accompanied only by the bailiffs; the jury was instructed not to discuss the vehicle among themselves while viewing it; the Corvette itself was neither tendered nor admitted as evidence in this case; no defense objection was raised at trial to either the state's request or the trial court's decision not to allow anyone other than the bailiffs to accompany the jury; and appellant first raised this issue in support of his motion for new trial.

The state contends that appellant's failure to object at trial constituted a waiver of his right to attend the jury's view of the Corvette. In support of its position the state relies on *Harwell v. England,* 234 Ga. 640 (217 SE2d 154) (1975), wherein our Supreme Court determined that a criminal defendant did not have a federal constitutional right to attend the jury's view of the scene of the crime. This matter was held to be a concern of Georgia law only, and the court found no authority which required a knowing and intelligent waiver by a criminal defendant under this circumstance. However, the situation in the case at bar concerned an "evidentiary view" by the jury as opposed to a jury view of the scene of the crime as in *Harwell v. England,* supra.[1] Therefore, this case is governed by *Chance v. State,* 156 Ga. 428 (1) (119 SE 303) (1923), and its progeny. *Jordan v. State,* 247 Ga. 328 (9) (276 SE2d 224) (1981).

---

[1] Although the Corvette was never formally tendered as evidence, the jury's view of the corpus delicti of the crime can not be said to be the equivalent of viewing the

In *Chance,* supra, the defendant was left in the courthouse, "entirely out of sight and hearing of the jury," while the jury viewed an automobile which had been offered as evidence. Our Supreme Court held: "Every person charged with an offense against the laws of this State shall be confronted with the witnesses testifying against him; and such person also has the right to be present at every stage of his trial.... [W]here ... the defendant ... made no waiver of his right to be present during this stage of his trial, and did not authorize his counsel to make such waiver for him, and his counsel did not make such waiver, this action on the part of the [trial] court was error requiring a new trial." *Chance,* supra at 428-429.

The right to be present at an "evidentiary view" such as in this case is protected by the constitution of this state. *Palmer v. State,* 155 Ga. App. 368 (271 SE2d 24) (1980). "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right ... must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Johnson v. Zerbst, 304 U. S. 458, 464 (58 SC 1019, 82 LE 1461) (1937); see also Schneckloth v. Bustamonte, 412 U. S. 218 (93 SC 2041, 36 LE2d 854) (1973). Since there is nothing in the record of the case at bar to show that appellant knowingly and intelligently waived his right to be present at the jury's view of the subject Corvette, appellant is entitled to a new trial.

*Judgment reversed. Quillian, C. J., and McMurray, P. J., concur.*

Decided October 15, 1981 — Rehearing denied November 3, 1981.

*William S. Hardman,* for appellant.

*Jeff C. Wayne, District Attorney, Charles H. Frier, Assistant District Attorney,* for appellee.

On Motion for Rehearing.

The evidence was undisputed that appellant rebuilt the subject Corvette from several sources. Nevertheless, appellant obtained

---

scene of the crime. See *Jordan v. State,* infra. The district attorney indicated that the purpose of the view in this case was to allow the jury to see various markings on the vehicle which had been identified by testimony at trial.

merely a replacement title under Code Ann. § 68-414a. Because the Corvette had been rebuilt, appellant was required to have obtained a salvage title under Code Ann. § 68-420a. In Division 1 of this opinion we held that, because appellant obtained an improper title for the Corvette, the jury was authorized to conclude that he had knowingly concealed or misrepresented the identity thereof. In his motion for rehearing appellant contends that he was unable to obtain a salvage title for the subject Corvette because the insurance company that had sold the Satterfield wreckage to the used auto parts dealer had failed to deliver the title thereto to the State Revenue Commissioner for cancellation in compliance with Code Ann. § 68-420a (a). Indeed, the record in this case established that title to the Corvette had never been cancelled. Appellant asserts that his efforts to obtain a replacement title, rather than a salvage title, were necessitated by the insurance company's failure to comply with the law.

Failure to fully comply with the provisions of the Motor Vehicle Certificate of Title Act (Code Ann. Ch. 68-4a) would make an insurance company subject to prosecution thereunder. Code Ann. § 68-431a. Nevertheless, the insurance company's apparent violation of the Act in this case provides no justification for appellant's failure to comply therewith. See Code Ann. § 26-901. Moreover, there is no evidence in the record which indicates that appellant made any effort whatsoever to obtain a salvage title rather than a replacement title.

*Judgment adhered to.*